IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| STEPHEN C. STANKO )<br>              *Petitioner*, )<br>   v. )<br>BRYAN P. STIRLING, Commissioner, )<br> South Carolina Department of Corrections, )<br> and LYDELL CHESTNUT, Deputy )<br> Warden, Broad River Secure Facility. )<br>                              )<br>              *Respondents.* ) | Case No.: 1:24-cv-04109-RMG-SVH |

## **FINAL** PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

1. (a) Petitioner, Stephen C. Stanko, was convicted and sentenced in the Georgetown County, South Carolina, Court of General Sessions.

    (b) Case No. 2005-GS-22-0918.

2. (a) Petitioner was convicted on August 11, 2006.

    (b) Petitioner was sentenced on August 18, 2006.

3. Petitioner was sentenced to death for murder, 20 years for assault and battery with intent to kill, 30 years for criminal sexual conduct, 30 years for kidnapping, and 30 years for armed robbery, all to run consecutively.

4. Petitioner was convicted of more than one crime.

5. Petitioner was convicted of murder, assault and battery with intent to kill, criminal sexual conduct, kidnapping and armed robbery.

6. (a) Petitioner pleaded not guilty.

    (b) Not applicable. Petitioner pleaded not guilty to all charges.

    (c) Petitioner was tried by a jury.

7. Petitioner did not testify at a pretrial hearing, trial or post-trial hearing.

8. Petitioner appealed his convictions and sentences.

9. On direct appeal to the South Carolina Supreme Court, petitioner's convictions and sentences were affirmed on February 25, 2008. A petition for rehearing was denied on

March 19, 2008. *See State v. Stanko*, 658 S.E.2d 94 (S.C. 2008), *cert. denied*, Oct. 6, 2008. Petitioner raised the following grounds on appeal:

(i) The trial judge erred in refusing to allow counsel, during *voir dire*, to ask potential jurors about their feelings and viewpoints concerning the defense of insanity when insanity was raised as an affirmative defense and the question was asked to reveal juror bias.

(ii) The trial judge committed reversible error at sentencing by failing to instruct the jury on the statutory mitigating circumstance provided by S.C. Code Section 16-3-20(C)(b)(7): "The age or mentality of the defendant at the time of the crime."

Petitioner filed a petition for rehearing, which the South Carolina Supreme Court denied on March 19, 2008. Petitioner did not seek further review by a higher state court because no higher state court exists.

Petitioner did seek further review from the United States Supreme Court by filing a petition for writ of certiorari on June 16, 2008, in Case No. 07-11542. His petition was denied on October 6, 2008. *Stanko v. South Carolina*, 555 U.S. 875 (2008).

10. Other than the direct appeals listed above, petitioner sought relief through state postconviction relief ("PCR") proceedings.

11. Petitioner filed an initial PCR application in the Georgetown County Court of Common Pleas, Case No. 2008-CP-22-1446, on October 17, 2008. Petitioner filed a Final Amended PCR Application on October 21, 2009, which raised the following grounds:

(i) Trial counsel failed to preserve for appellate review the judge's failure to instruct the jury on the statutory mitigating circumstance of the age or mentality of the defendant at the time of the crime as provided by S.C. Code Section 16-3-20 (C)(b)(7).

(ii) Trial counsel failed to request a change of venue based upon the pre-trial publicity of this case and based upon the fact that about 116 potential jurors were questioned, 72 excused, 44 qualified, and 50 had fixed opinions.

(iii) Trial counsel was ineffective for seating 5 jurors on the panel who had formed opinions; and one juror who knew and was close friends with the minor victim's principal and was acquainted with a detective. The 5 jurors are as follows: Donald Horton, 161; Stephen Walters, 343; David Dubois, 84; Patricia Wofford, 363; and Larry Drake, 82. Trial counsel failed to question Carroll Eugene Baker, 368, who seemed anxious, based on notes, as the Court was questioning him and allegedly was formerly the Captain of the Fire and Rescue Squad and may have been present at the crime scene.

(iv)   Trial counsel failed and refused to use any of the documents showing defendant's desperate battle and eventual success to have his wrongful classification as a "sex offender" removed from his record. This information would have aided the insanity defense by showing how the adult victim's statement that she would call the defendant's Department of Probation, Parole and Pardon Services agent and advise that the defendant had been improperly touching the minor victim created fear in the defendant which caused him to black out because of his mental defect to the point that he did not know the difference between moral and legal right and wrong at the time of the incident.

(v)    Trial counsel failed and refused to allow defendant to have the witness list of the State. Trial counsel did not discuss the potential testimony of the witnesses with the defendant; therefore, counsel was unprepared to effectively cross examine the witnesses against the defendant to the point that the witnesses could say almost anything they wanted about defendant without any effective cross examination. Proper cross examination of the witnesses would have lessened the impact of the negative statements made against the defendant. The ineffective cross examination of Vernon House, Darrell Lewis, Steve Lee, James Jackson, Irby Walker and perhaps others was prejudicial to the defendant.

(vi)   Trial counsel failed to use all of the favorable or mitigating information contained in the defense file such as the Department of Probation, Parole & Pardon Services file and other information to the prejudice of defendant.

(vii)  Appellate counsel failed to request sufficient time to properly prepare the appeal in light of Justice Jean Toal's order that the appeal should be expedited and that no extensions would be granted absent extraordinary circumstances and that such extensions were to be granted only by Justice Toal or the full Court. The defendant's due process rights were violated by appellate counsel not receiving sufficient time to research, write, and prepare the appeal.

(viii) Appellate counsel failed to brief and argue that defendant's motion for directed verdict should have been granted by the trial court.

(ix)   Trial counsel was ineffective for failing/refusing to use documents provided by both the defendant and defense investigators that would have refuted testimony and/or impeached state witnesses.

(x)    The state committed prosecutorial misconduct in failing to provide discovery documents to the defense pursuant to statutory requirements and rules of procedure.

(xi)   Trial counsel was ineffective for failing to object to numerous statements of witnesses referencing the defendant as "the murderer" and other inflammatory and prejudicial terms.

(xii)     The South Carolina Supreme Court violated the defendant's due process rights by literally placing appellate attorneys in an unfair, unjust, and unreasonable position to perfect a complete appeal in a capital case with 3,000 pages of transcripts and highly complex arguments and issues with no provision for extensions which are normally and frequently granted in all other death penalty cases.

Following an evidentiary hearing, petitioner's PCR application was denied but the South Carolina Supreme Court remanded the case for additional PCR proceedings in a December 14, 2017 order. On remand, petitioner further amended his PCR Application to raise the following grounds:

(i)     Ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution, *Strickland v. Washington*, 466 U.S. 668 (1984), and the corresponding provisions of South Carolina law during the sentencing phase of applicant's capital trial, in that trial counsel elicited expert testimony that Applicant is a psychopath who could not help killing the victim and other testimony tending to dehumanize Applicant in the eyes of the jury, instead of evidence that tended to lessen Applicant's culpability and humanize Applicant in the eyes of the jury, see American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases 10.11, commentary (2003).

(ii)     Ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution, *Strickland v. Washington*, 466 U.S. 668 (1984), and the corresponding provisions of South Carolina law during the sentencing phase of applicant's capital trial, in that trial counsel failed to investigate and present all available mitigating evidence of Applicant's life history and background, including testimony from an appropriate social history expert and/or other appropriate witnesses about how Applicant's history and background affected his behavior, mental state, and functioning over the course of his life. *Wiggins v. Smith*, 539 U.S. 510 (2003); *Weik v. State*, 409 S.C. 214 (2014).

(iii)     Ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution, *Strickland v. Washington*, 466 U.S. 668 (1984), and the corresponding provisions of South Carolina law during the sentencing phase of applicant's capital trial, in that trial counsel failed to investigate all available mitigating evidence of Applicant's mental health, including testimony from an appropriate mental health expert and/or other appropriate witness about how Applicant's mental health/illness affected his behavior, mental state, and functioning over the course of his life. *Wiggins v. Smith*, 539 U.S. 510 (2003); *Weik v. State*, 409 S.C. 214 (2014).

(iv)     Ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution, *Strickland v. Washington*, 466 U.S. 668 (1984), and the corresponding provisions of South Carolina law during the sentencing phase of applicant's capital trial, in that trial counsel failed to investigate

    and prepare available mitigating evidence of Applicant's prior good behavior in prison and the likelihood that he would not be a future danger while incarcerated. *Skipper v. South Carolina*, 476 U.S. 1 (1986).

(v) Ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution, *Strickland v. Washington*, 466 U.S. 668 (1984), and the corresponding provisions of South Carolina law during the sentencing phase of applicant's capital trial, in that trial counsel failed to object to a legally improper comment made during the State's penalty phase closing, which informed jurors they must impose the death penalty based on the evidence. Tr. 3389 ("And you made a promise to the court that given sufficient evidence, facts and circumstances, you would not only consider the death penalty, but you would impose the death penalty. You have reached that point in the process."). *Woodson v. North Carolina*, 428 U.S. 280 (1976).

(vi) Applicant was denied an impartial jury – guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of South Carolina law, in that multiple jurors failed to disclose potential bias in *voir dire* questioning, including the extent of prior knowledge of the case; knowledge of, and personal interactions with, multiple witnesses who testified against Applicant at trial; and connection to one of the victims in the case. *Smith v. Phillips*, 455 U.S. 209 (1982) (O'Connor, J., concurring); *Leonard v. United States*, 378 U.S. 544 (1964).

Petitioner's amended PCR application was denied on March 14, 2021. His motion to alter or amend the judgment was denied on June 9, 2021. Petitioner appealed the denial of his PCR application to the South Carolina Supreme Court, which denied his petition for writ of certiorari on June 20, 2024.

**12. GROUNDS FOR FEDERAL HABEAS CORPUS RELIEF**

 **I.** **Petitioner was denied the right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments, when trial counsel selected a nonviable and objectively unreasonable theory of the case.**

  *A. Supporting Facts*

Petitioner was arrested on April 11, 2005, and charged with murder in both Georgetown and Horry counties. In Georgetown, petitioner was charged with the murder of his live-in girlfriend, Laura Ling, and sexual assault of her minor daughter. After committing the offenses, petitioner took Ms. Ling's car and committed another homicide in Horry County. The Georgetown

5

County case proceeded to trial first and the trial court appointed attorney William I. Diggs as lead counsel and Gerald Kelly as second chair. As first chair, Diggs "set the agenda" for the defense.[1]

Prior to obtaining any expert evaluations, Diggs settled on his defense theory – that petitioner was not guilty by reason of insanity ("NGRI") because he was a psychopath with brain damage. Diggs stated he wanted to pursue his theory from "the first time [he] talked to" petitioner. Before any defense investigation could be conducted, Diggs announced his theory to Kelly and the defense mitigation investigator, Dale Davis, at their first meeting.

Diggs identified Dr. Thomas Sachy, a psychiatrist from the Atlanta area, as a potential expert to support his theory.[2] On March 20, 2006, Diggs contacted Dr. Sachy by telephone. They had a thirty-minute telephone call, and on the basis of that call, Diggs decided "[h]e will be our expert" and noted the same on his time sheet. Diggs testified that he never explored any alternatives to raising the insanity defense in preparation for petitioner's trial.

Diggs' theory in support of the insanity defense was not legally viable. Pursuant to S.C. Code § 17-24-10(A),

> [i]t is an affirmative defense to a prosecution for a crime that, at the time of the commission of the act constituting the offense, the defendant, as a result of mental disease or defect, lacked the capacity to distinguish moral or legal right from moral or legal wrong or to recognize the particular act charged as morally or legally wrong.

However, "[e]vidence of a mental disease or defect that is *manifested only by repeated criminal or other antisocial conduct is not sufficient* to establish the defense of insanity." *Id.* § 17-24-10(C)

---

[1] Since petitioner's trial, Diggs has been disbarred in both North and South Carolina, where he was previously licensed to practice law.

[2] Dr. Sachy pleaded guilty to federal drug charges in June 2023. He was sentenced to time served, and his medical license was revoked, along with his DEA registration. *Jones County doctor gets time served in 2018 pill mill case after plea deal*, The Telegraph (May 11, 2023), available at: https://www.macon.com/news/local/crime/article275315991.html.

(emphasis added). Psychopathy and antisocial personality disorder are both defined by a pervasive pattern of repeated criminal or antisocial conduct. Apparently recognizing this problem, Diggs filed a pre-trial motion to have South Carolina's insanity statute declared unconstitutional. When his motion was denied, Diggs failed to change his strategy and persisted in his pursuit of an insanity defense.

During the guilt phase of the trial, Diggs presented the testimony of several experts selected by Sachy in an effort to prove that Stanko was legally insane at the time of the crime. Dr. Marc Einhorn testified that he administered Stanko's positron emission ("PET") scan. Dr. Joseph Wu reviewed the PET scan, which revealed abnormalities in the frontal lobe that reduced frontal lobe functioning at fifty to eighty percent (compared to a normal brain). Neither Dr. Einhorn nor Dr. Wu conducted a clinical interview of petitioner or spoke to witnesses about petitioner's functioning, and neither were asked to opine on how the brain abnormality would have affected petitioner's functioning or behavior.[3]

Diggs then called Sachy as the "star" expert witness to describe the significance of the brain scan findings. Sachy testified he was "100 percent certain" petitioner is a psychopath and explained that "[p]sychopaths are a specific subset of antisocials." Sachy used the term "psychopath" many times throughout his testimony and compared petitioner to "famous psychopaths in history," including Ted Bundy, John Wayne Gacy, the killer in Alfred Hitchcock's movie *Psycho*, and Hannibal Lector from the *Silence of the Lambs*. In making these comparisons, Sachy stated "[Psychopaths] are terrifying. They are like evil. They are like the devil." Based on

---

[3] Dr. Bernard Albiniak testified generally about brain functioning and regions of the brain. Dr. James Thrasher testified about interviewing petitioner and about petitioner's birth records, which showed his survival was questionable around the time of his birth.

this testimony, trial counsel then argued that petitioner was not guilty by reason of insanity. The jury rejected the insanity defense and convicted petitioner on all counts.

Despite the jury's clear rejection of his theory, Diggs repeated essentially the same presentation in the penalty phase, offering additional testimony from Sachy that petitioner's psychopathy made him prone to violence and impulsiveness. Diggs also presented the testimony of Dr. Evelyn Califf, a Christian family counselor, who testified in generalities that petitioner had a dysfunctional family with a strict father. Califf affirmed Sachy's dehumanizing labels by testifying that petitioner "has tendencies for antisocial," "has more narcissism than being a sociopath," and "he certainly has a lot of psychopathic issues." Califf testified she became involved in the case only two and a half weeks before testifying and was unable to get in contact with petitioner's family during that time. No one from petitioner's family or childhood testified.[4] After the defense presentation, the jury returned a verdict of death in approximately two hours.

### B. Exhaustion

Trial counsel's performance was deficient and resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner exhausted this claim by raising it in his final amended PCR application and in his appeal to the South Carolina Supreme Court following the denial of state postconviction relief. The state court's adjudication of the merits of this claim resulted in a decision that was contrary to or an unreasonable application of clearly established federal law and/or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §§ 2254(d)(1) and (d)(2).

---

[4] Trial counsel also presented some evidence that, prior to the capital crimes, petitioner was involved in several schemes or cons that had been reported to various state agencies, but the agencies did nothing to prevent him from committing additional crimes.

> **II.	Petitioner was denied the right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments, when trial counsel elicited expert testimony that petitioner is a psychopath who could not help killing people and other testimony tending to dehumanize petitioner.**
>
> *A.  Supporting Facts*

The purpose of mitigating evidence is to humanize a capital defendant, explain the many complex factors that led to the crime, lessen the defendant's moral culpability, reduce the ballast of aggravating evidence on the opposing side of the scale, and offer jurors reasons to vote for a sentence less than death. Instead, throughout the trial, counsel presented evidence and testimony that dehumanized petitioner, making it more likely the jury would vote for death, contrary to the prevailing professional norms at the time.

With his first expert defense witness, Diggs elicited testimony from Dr. Bernard Albiniak comparing petitioner to "reptiles, like crocodiles and alligators and caiman"[5] that "have no frontal lobes at all, so they can't conform their behavior." Dr. James Thrasher, another defense expert, called petitioner a "con-man" who "tells lies upon lies": "He's a psychopath. He tells stories. . . . He's not normal. He has the personality structure of an antisocial personality with a socialized overlie." In the guilt-phase closing, Kelly compared petitioner to the tiger that "mauled" Roy of Siegfried and Roy and "drug [sic] [Roy] off the stage by his head." At sentencing, Kelly closed by telling the jury that petitioner was "a psychopathic personality. He's an ill, sick person." These arguments were a far cry from an effective defense presentation.

The most damaging defense witness was Sachy, who testified in both the guilt and penalty phases of the trial. Sachy was the linchpin of Diggs' insanity-by-psychopathy defense, and he told the jury in no uncertain terms that petitioner was a psychopath: "[M]y diagnosis is that Mr. Stanko

---

[5] A caiman is a reptile similar to alligators and crocodiles.

9

is a psychopath, and I'm 100 percent certain of that, and I believe we've proved it. We have shown that his brain—this is the brain of a psychopath." Sachy described petitioner's brain damage in a dehumanizing way, saying petitioner was less than human due to the damage in his frontal lobe: "[T]he empathy part of a human being, the conscience, having a conscience, having guilt, having caring, it's this part of the brain right here [frontal lobe] that does that."

Like Albiniak, Sachy compared petitioner to a reptile with no conscience or impulse control, and a brain similar to that of "a lizard or an alligator," telling the jury that petitioner's brain lacked "the difference that sets [humans] apart from lower creatures." Sachy went so far as to describe to the jury all the ways that he thought petitioner ticked the boxes of the Hare Psychopathy Checklist, the most widely used measure of psychopathy: "[I]f we look at the Ha[re] Psychopathy Checklist, conning and manipulative behavior, pathological lying. Right from a young man he is showing these hallmarks of being a psychopath." "I am circling something right here on the Ha[re] Psychopathy Checklist, impulsivity. He's just acting on his impulses." Finally, Sachy explicitly compared petitioner to several infamous psychopathic serial killers, real and fictional: "[Psychopaths] are just charming. I think of Ted Bundy again. I think of John Wayne Gacy. I think of all the people they manipulated without difficulty. . . . But that's the way their brain works." "Psychopaths are a specific subset of antisocials. They are the kind of people we're terrified of . . . They're the Hannibal Lecters from Silence of the Lambs." Sachy told the jury that people like petitioner "are like evil. They are the devil."

The evidence and arguments offered by trial counsel were ineffective and contrary to the prevailing professional norms for capital defense, but far worse, they *added to the aggravating evidence* and strengthened the State's case for death.

10

*B. Exhaustion*

Trial counsel's performance was deficient and resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner exhausted this claim by raising it in his final amended PCR application and in his appeal to the South Carolina Supreme Court following the denial of state postconviction relief. The state court's adjudication of the merits of this claim resulted in a decision that was contrary to or an unreasonable application of clearly established federal law and/or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §§ 2254(d)(1) and (d)(2).

**III.     Petitioner was denied the right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments, by trial counsel's failure to investigate and present all available mitigating evidence regarding petitioner's life history and background, including testimony from an appropriate social history expert and/or other appropriate witnesses.**

*A. Supporting Facts*

Trial counsel failed to develop and present significant mitigating evidence regarding petitioner's life history and background, including evidence that would have demonstrated petitioner was ill-equipped to cope with the stressors facing him in the months leading up to the crimes.

At the postconviction relief hearing, Dr. Arlene Andrews, an expert in social history assessment, and Jeff Stanko, petitioner's brother, testified about petitioner's life history and family background. Among other things, these witnesses: (1) described the family's difficult relationship with petitioner's father; (2) recounted the traumatic impact on petitioner's family (and particularly on petitioner himself) stemming from his oldest brother's murder; (3) described a shift in petitioner's behavior near the end of adolescence and corresponding with a series of head injuries;

11

and, (4) discussed a series of life stressors and petitioner's feelings of overwhelming struggle in the months leading up to the capital offense.

This evidence was available at the time of trial but was not presented due to trial counsel's unreasonable failure to adequately investigate petitioner's "medical history, educational history, employment and training history, family and social history, prior adult and juvenile correctional experience, and religious and cultural influences." *Wiggins v. Smith*, 539 U.S. 510, 524 (2003). Trial counsel hired Califf, a Christian family counselor, just two and a half weeks prior to her testimony. She presented the jury with only general testimony that petitioner had a dysfunctional family and a strict father and did not provide any analysis of petitioner's life history and background or discuss the impact that it had on petitioner and his functioning around the time of the offense. Califf further damaged the defense by reiterating the psychopathy narrative. Had trial counsel instead hired an appropriate social history expert with adequate time to prepare, the jury would have heard a detailed life history and its implications.

B. *Exhaustion*

Trial counsel's performance was deficient and resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner exhausted this claim by raising it in his final amended PCR application and in his appeal to the South Carolina Supreme Court following the denial of state postconviction relief. The state court's adjudication of the merits of this claim resulted in a decision that was contrary to or an unreasonable application of clearly established federal law and/or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §§ 2254(d)(1) and (d)(2).

> **IV.    Petitioner was denied the right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments, by trial counsel's failure to investigate and present all available mitigating evidence regarding petitioner's mental health, including testimony from an appropriate mental health expert and/or other appropriate witnesses.**

*A. Supporting Facts*

Trial counsel presented only aggravating implications of petitioner's brain damage by equating it with psychopathy and comparing petitioner to famous psychopaths and serial killers. Counsel ineffectively failed to present the mitigating behavioral impacts of petitioner's brain damage or explain that it was treatable.

At the postconviction relief hearing, Dr. Joseph Wu, testified that trial counsel gave him "an unusually circumscribed" assignment in petitioner's case, asking him only to review the PET scan and determine whether there were any abnormalities. Trial counsel had "no real interest in going further" than a superficial analysis of petitioner's brain. Had counsel asked Dr. Wu to explain the behavioral aspects of petitioner's brain damage, Dr. Wu would have testified that petitioner's brain damage is treatable with cognitive therapy. He would have described how the structured environment in the prison setting would help petitioner deal with stress and control his impulses in a way he could not in the unpredictable outside world. In addition, Dr. Wu could have clarified that petitioner's brain damage provided a biological explanation for his inability to handle stressors, his failure to anticipate and learn from consequences, and his aggressive reaction to the stressors converging at the time of the offense. According to Dr. Wu, because petitioner's brain damage explains his behavior, a diagnosis of antisocial personality disorder or psychopathy is medically inaccurate.

Had counsel asked Dr. Wu or other appropriate experts to explain the mitigating aspects of petitioner's brain damage, the jury could have understood the mitigating value of petitioner's neurological dysfunction rather than equating it to psychopathy.

*B. Exhaustion*

Trial counsel's performance was deficient and resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner exhausted this claim by raising it in his final amended PCR application and in his appeal to the South Carolina Supreme Court following the denial of state postconviction relief. The state court's adjudication of the merits of this claim resulted in a decision that was contrary to or an unreasonable application of clearly established federal law and/or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §§ 2254(d)(1) and (d)(2).

**V.     Petitioner was denied the right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments, by trial counsel's failure to investigate and present available mitigating evidence regarding petitioner's good behavior in prison and the likelihood that he would not be a future danger while incarcerated.**

*A. Supporting Facts*

Trial counsel failed to investigate and present significant evidence of petitioner's adaptability to prison. At the postconviction hearing, Kelly testified that he did not recall developing an adaptability theory, and Diggs testified that he thought it was enough that the defense called witnesses from the Georgetown County Detention Center.[6] The defense mitigation investigator, Dale Davis, explained that she thought prison adaptability evidence would have been

---

[6] Trial counsel presented brief testimony from three witnesses who worked at the Georgetown County Detention Center where petitioner was detained prior to trial: Corporal Michael Stanley, Officer Shirlease Maynard, and Sergeant Victoria Jones. The witnesses generally responded to yes or no questions with short answers agreeing that petitioner was not a problem in the jail. Trial counsel did not meet at least two of the three detention center witnesses prior to their testimony.

helpful and passed on the name of a prison adaptability expert to the defense team, but counsel never responded. As a result, the three witnesses the defense called at trial were able to offer only limited insight into the least relevant period of petitioner's incarceration—his relatively short pretrial detention while he was facing a death sentence—and the jury did not hear anything about petitioner's behavior during his previous ten-year prison sentence.

In postconviction, six witnesses testified regarding petitioner's prior incarceration: (1) Ralph Beardsley, the warden of Turbeville Correctional Institution; (2) George Waite, the chief disciplinary officer at Turbeville; (3) George Windley, the senior pastor at Ebenezer Baptist Church and the chaplain at Turbeville; (4) Dr. James Austin, who was qualified as an expert in risk assessment and inmate classification; (5) Dr. Andrews; and (6) Dr. Joseph Wu. Each witness provided a different perspective on how petitioner would adapt to prison and why he would not be a threat to other inmates or staff if he were sentenced to life without the possibility of parole. Specifically, the experts discussed three aspects of petitioner's adaptability: (1) his extremely low risk of violence or future criminal behavior while incarcerated; (2) his unique responsiveness and adaptability to the structure of a prison environment; and (3) his ability to contribute positively to the prison system. Altogether, the evidence presented in postconviction overwhelmingly showed that petitioner was a model prison inmate who positively contributed to the prison environment and earned the widespread respect of prison staff.

Had trial counsel performed adequately, the jury would have heard compelling evidence that petitioner could adapt well to prison and was not likely to be a future danger if sentenced to life without the possibility of parole, rather than death.

*Exhaustion*

Trial counsel's performance was deficient and resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner exhausted this claim by raising it in his final amended PCR application and in his appeal to the South Carolina Supreme Court following the denial of state postconviction relief. The state court's adjudication of the merits of this claim resulted in a decision that was contrary to or an unreasonable application of clearly established federal law and/or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §§ 2254(d)(1) and (d)(2).

13. All grounds for relief raised in this petition have been presented to the highest state court having jurisdiction. There is no ground in this petition that has not been presented to the state court.

14. Petitioner has not previously filed any final petition in federal court regarding the conviction challenged in this petition.

15. Petitioner does not have any petition or appeal now pending in any court, either state or federal, regarding the judgment he is challenging herein.

16. Petitioner was represented at trial by William I. Diggs and Gerald Kelly.
    Petitioner was represented in his direct appeal to the South Carolina Supreme Court by Joseph L. Savitz, III, and Katherine H. Hudgins.

    Petitioner was represented in his initial PCR proceedings by Stuart M. Axelrod, Bobby Frederick and Tristan Shaffer.

    Petitioner was represented in his additional PCR proceedings, following remand from the South Carolina Supreme Court, by Lindsey S. Vann and Henry Morris Anderson, Jr.

    Petitioner was represented on appeal from the denial of postconviction relief by Lindsey S. Vann and Allison Franz.

17. Petitioner is also under a sentence of death in Horry County, South Carolina. Petitioner sought federal habeas corpus relief with respect to the Horry County judgment. The district court denied relief and the Fourth Circuit Court of Appeals affirmed. *Stanko v. Stirling*, 109 F.4th 681 (4th Cir. 2024), *cert. denied*, 2025 WL 1287095 (May 5, 2025).

18. Timeliness of petition. Petitioner was convicted and sentenced to death in August of 2006. The South Carolina Supreme Court affirmed on February 25, 2008. *State v. Stanko*, 658 S.E.2d 94 (S.C. 2008). Petitioner sought rehearing, which was denied on March 19, 2008. *Id*. He petitioned the Supreme Court of the United States for review of the direct appeal

decision, and his petition was denied on October 6, 2008. *Stanko v. State*, 555 U.S. 875 (2008). Thus, petitioner's judgment became final on October 6, 2008. 28 U.S.C. § 2244(d)(1)(A).

Petitioner's initial application for state postconviction relief was properly filed on October 17, 2008. At that time, eleven (11) days had elapsed on the one-year limitations period for filing a federal habeas corpus petition as prescribed by 28 U.S.C. § 2244(d). The circuit court denied postconviction relief, and the South Carolina Supreme Court denied review of petitioner's appeal from that decision on June 20, 2024. This Court has held that a statutorily tolled federal limitations period begins to run following the filing of the remittitur from the state court's denial of review on PCR appeal. *See Beatty v. Rawski*, 97 F. Supp. 3d 768, 774 (D.S.C. 2015). However, in this case, no remittitur was issued. Therefore, petitioner's application for state postconviction review remained pending, and the federal statute of limitations period was tolled, until at least June 20, 2024. 28 U.S.C. § 2244(d)(2). Accordingly, petitioner has at least until **June 9, 2025**, to file his petition for writ of habeas corpus. Petitioner filed a placeholder petition on October 25, 2024 (ECF No. 23). He hereby submits a final habeas petition, which is timely filed.

        Respectfully submitted,

        **EMILY C. PAAVOLA**
        Fed. ID # 11488
        Justice 360
        900 Elmwood Ave., Suite 200
        Columbia, SC 29201
        emily@justice360sc.org
        (803) 765-1044

        **LINDSEY S. VANN**
        Fed. ID # 11872
        Justice 360
        900 Elmwood Ave., Suite 200
        Columbia, SC 29201
        lindsey@justice360sc.org
        (803) 765-1044

        BY: s/ *Emily C. Paavola*

May 21, 2025